IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IMR USA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No.  04 C 100 |
| v. | ) | |
| GES EXPOSITION SERVICES, INC., | ) | HONORABLE DAVID H. COAR |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before this Court is Defendant GES Exposition Services, Inc.'s ("Defendant" or "GES") motion for partial summary judgment on Plaintiff IMR USA, Inc.'s ("Plaintiff" or "IMR") complaint. For the reasons set forth below, Defendant's motion for partial summary judgment is DENIED.

**I. Summary Judgment Standard**

Summary judgment is appropriate if, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Schuster v. Lucent Technologies, Inc., 327 F.3d 569, 573 (7th Cir. 2003). (quoting Fed. R. Civ. P. 56(c)).

When evaluating a motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party, and makes all reasonable inferences in her favor. See Haywood v. Lucent Technologies, Inc., 323 F.3d 524 (7th Cir. 2003). The Court accepts the

non-moving party's version of any disputed facts, but only if those facts are supported by relevant, admissible evidence. Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996).

The moving party has the burden of demonstrating the absence of genuine issues of material fact for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931 (7th Cir. 1995). If the moving party meets this burden, the non-moving party must set forth specific facts that demonstrate the existence of a genuine issue of material fact for trial. Rule 56(e); Celotex, 477 U.S. at 324. To successfully oppose the motion for summary judgment, the non-moving party cannot rest on the pleadings alone but must designate specific facts in affidavits, depositions, answers to interrogatories, or admissions that establish that there is a genuine triable issue. Selan v. Kiley, 969 F.2d 560, 564 (7th Cir. 1992).

**II. Facts**[1]

IMR is a Wisconsin Corporation, with its principal place of business in Chicago, Illinois. IMR sells a wide range of manufacturing equipment to various types of manufacturers. GES is a Nevada corporation with its principal place of business in Las Vegas, Nevada. GES is a provider of exhibition and convention show services at various venues around the United States. GES offers the following types of services at exhibitions and conventions: labor, heavy equipment and material handling, crane rental, carpet and furniture rental, and booth installation and dismantlement.

---

[1] Unless otherwise noted, all facts are taken from the Parties' Local Rule 56.1 materials

From September 4 through 11, 2002, the Association for Manufacturing Technology ("AMT") held an exhibition entitled International Manufacturing and Technology Show 2002 ("IMTS 2002") at McCormick Place in Chicago, Illinois. AMT selected GES as the official general services provider for the IMTS 2002, which meant that Defendant was the exclusive contractor designated to perform all of the logistical work at McCormick Place, including receiving and unloading the exhibitors' machinery.

IMR was an exhibitor at IMTS 2002. Plaintiff intended to exhibit its "T-Flex Machine" at IMTS 2002. The T-Flex is comprised of internal components that move with a high degree of precision to perform a variety of "machining" functions, such as putting grooves in metal parts. The T-Flex machine weighs in excess of 24,000 pounds. Sometime in January 2002, each registered exhibitor of IMTS 2002 was provided with an Exhibitor's Handbook (the "Handbook"). The Handbook contained various information about IMTS and all the necessary product and service order forms to be submitted by the exhibitors in order to secure various show products and services. In addition, the Handbook contained a table of contents, which listed all of the informational topics and documents contained in the Handbook.

The GES order forms contained in the Handbook described the services available from GES, and the costs of those services, as well as the deadline for ordering the services. Each GES product and service order form provided in the Handbook contained a provision at the bottom of the form which stated, "All orders are governed by the GES Payment Policy and Limits of Liability and Responsibility" ("Limits of Liability"). GES' Limits of Liability were contained in the Handbook. The first paragraph of GES' Limits of Liability declaration, in pertinent part, states:

The placing of an order for services and/or equipment by an exhibitor or any agent of the exhibitor shall be construed as an offer subject to acceptance and approval of GES in its sole discretion. Upon participation of any GES show or event, the Exhibitor and its agents shall be bound by the terms and conditions set forth in Sections 1 through 14 below.

Section 6 of GES' Limits of Liability states:

GES and its subcontractors are not insurers; i.e., GES does not insure the Exhibitor's property against loss or damage, nor does it provide for full replacement value should loss or damage occur. Insurance, if any, shall be obtained by the Exhibitor. Amounts payable by GES under this paragraph are based on the scope of the liability as herein set forth and are unrelated to value of the Exhibitor's property. Provisions of this paragraph shall apply if the Exhibitor's property is lost or damaged through performance or nonperformance of services by GES, or from the negligence of GES, its subcontractors, or their respective employees. If such loss or damage occurs, the liability of GES and its subcontractors shall be limited to a sum equal to $.30 per pound per article, with a maximum liability of $50.00 per article or $1,000.00 per shipment, whichever is less. This amount shall be considered Exhibitor's agreed upon damages and exclusive remedy.

Further, Section 7 of GES' Limits of Liability states:

GES and its subcontractors shall not be liable to any extent whatsoever for any indirect, special, incidental or consequential damages, which may include, but are not limited to any actual, potential or assumed loss of profits or revenues, loss of use of equipment or products, or any collateral costs that may result from any loss or damage to Exhibitor's materials or any injury to Exhibitor's personnel which may make it impossible or impractical for Exhibitor to exhibit its materials.

In addition, the bottom section of GES' Limits of Liability states:

Be sure your freight is insured from the time it leaves your place of business until it is returned after the show. It is suggested that Exhibitors arrange all risk coverage. This can usually be done by riders to existing policies. Contact your insurance representative. Also, be sure your liability insurance is in effect during transit and return of your freight, during storage and at show site. As a courtesy to you, GES has arranged for an independent company to offer insurance protection. You may purchase this coverage as outline[sic] in the application form. Please see your Exhibitor's Kit, contact GES Exhibitor Services or contact the GES Risk Management Department.

Plaintiff's sales representative, Dennis Maddox ("Maddox"), reviewed the Limits of Liability. Plaintiff contends that Maddox contacted Defendant's agent, Mary Jo Sokolowski ("Sokolowski"), and asked whether IMR needed to obtain insurance to cover damage resulting from Defendant's unloading of the T-Flex Machine. According to IMR, during the call, Sokolowski advised Maddox that Defendant had a "certificate of insurance" that would cover any claim for damage arising from the acts of its employees and agents in handling Plaintiff's T-Flex Machine. Maddox believed that, notwithstanding the limits of liability, this "certificate of insurance" would cover losses caused by Defendant when unloading the T-Flex machine. However, Defendant contends that it does not have a "certificate of insurance" and does not cover such losses.

On or about August 22, 2002, IMR had the T-Flex Machine delivered via flatbed truck to McCormick Place. GES' agents, Scott Wayne ("Wayne"), Randi Amato ("Amato") and Tom Pazular ("Pazular") prepared the T-Flex machine for lifting, and acted as "riggers." Wayne, Amato and Pazular looked for a shackle to fit the middle lifting hole. Maddox recalls seeing Defendant's agents walk by with shackles. The parties dispute what happened next. Defendant contends that the GES riggers assigned to the IMR booth attempted to lift the T-Flex Machine from the flatbed truck by lifting straps through the T-Flex's Machine's lifting holes and then to a crane. Defendant asserts that despite the attempted lift, two of the lifting straps broke, causing the T-Flex machine to drop back onto the flatbed truck.

Plaintiff provides a markedly more detailed version of the events on August 22, 2004. Plaintiff contends that prior to the delivery of the T-Flex machine to McCormick Place, IMR provided GES with an instruction sheet that conveyed the proper way to lift the T-Flex Machine.

When the T-Flex Machine arrived on a flatbed truck on August 22, 2004, Defendant's agents searched for but could not find a shackle for the middle lifting hole. While one of the Defendant's agents was still searching for a shackle, Plaintiff maintains that the other two decided to take a "short cut," and "bunched" a synthetic sling through the middle lifting hole. Plaintiff believes that GES' agents knowingly tied the sling back onto itself in a method called a "choke hold" (as Plaintiff maintains was listed on the sling's warning label as an inappropriate lifting method), which reduced the sling's recommended capacity down to 5,000 to 6,700 pounds. Plaintiff maintains that GES' agents knowingly failed to protect the strap from the "sharp" lifting edge of the lifting hole because they could not fit the padding in the hole, which was too stuffed by the "bunched" sling.

When the T-Flex machine dropped, it fell 4 to 6 inches into the flatbed truck, and Plaintiff contends that this caused significant damage to the machine. Immediately after the incident, Wayne, Defendant's rigging foreman, stated that he and the other riggers, "should have foreseen this problem prior to the incident." See Pl.'s Tab, Ex. D (IMR0423). In addition, Amato stated that she and other riggers "should have padded the hole to prevent the strap from being cut." Id. IMR maintains that through discovery, it has learned that Defendant did not train its riggers, and does nothing to ensure that the individual it holds out as riggers and the rigging foreman have received the necessary training to properly fit the lift exhibitor's machinery. Plaintiff's damages exceed $123,000, exclusive of interest, punitive damages, attorneys' fees and costs.

## III. Analysis

GES maintains that because of the exculpatory provision in the Parties' contract, Paragraph 6, entitled "Limits of Liability and Responsibility" GES' liability to IMR is limited $.30 per pound per article, with a maximum liability of $50.00 per item or $1,000 per shipment, or whichever is less. Thus, GES contends, damages should be limited to $50.00 in this cause of action. Plaintiff contends that the evidence adduced during discovery demonstrates that Defendant and its agents acted in a reckless manner. IMR maintains that the exculpatory provision at issue does not explicitly, or implicitly, encompass claims for gross negligence or recklessness, and since Defendant has not moved for summary judgment on the issue of recklessness, Plaintiff is able to raise a genuine issue of material fact concerning that issue. Second, IMR asserts, even if Defendant drafted the exculpatory provision to encompass recklessness, such an exculpatory provision would be void, because a party cannot contractually limit its liability for reckless misconduct as a matter of law. Third, Plaintiff claims that the exculpatory provision is unenforceable as a matter of law as to all claims, including basic negligence, because, according to Plaintiff, Defendant's agent severely misrepresented the effect and nature of the exculpatory provision. Fourth, Plaintiff contends, the exculpatory provision is void as a matter of law as to all claims, including basic negligence, because Plaintiff was forced to use Defendant for rigging services, had no reasonable alternative for such services, and was forced to accept Defendant's "take it or leave it" exculpatory provision. Fifth, Plaintiff contends, the exculpatory provision is void as to all claims, including basic negligence, as a matter of public policy, because it would permit Defendant to avoid the consequences of its various violations of Federal Occupational Safety and Health Administration regulations, which

violations were clearly demonstrated during discovery. Each of Plaintiffs' arguments will be addressed in turn.

*A. Does Defendant's "Limits of Liability" Provision Encompass Gross Negligence?*

Plaintiffs maintain that Defendant's limits of liability only encompass claims involving "performance or nonperformance of services" (i.e., breach of contract claims) or claims involving the "negligence" of its employees or agents, and that its limits of liability do not in any way explicitly encompass claims arising from "recklessness," "gross negligence" or "willful and wanton" misconduct. Plaintiffs assert that there is, at minimum a genuine issue of material fact concerning whether Defendant's conduct was negligent. As such Plaintiff, maintains that Plaintiff's exculpatory clause cannot be construed to limit damages against it.

Construction of a contract involves questions of law, and it is the court's duty to effectuate the intent of the parties to the contract. Henderson v. Roadway Express, 720 N.E.2d 1108, 1110 (Ill. App. Ct. 1999). In construing a contract, every provision should be given effect, and the words should be read with their ordinary meaning. First Community Traders, Inc. v. Heinold Commodities, Inc., 766 F.2d 1007, 1014 (7th Cir. 1985). Any ambiguities must be construed against the drafter of the contract. Jewelers Mut. Ins. Co. v. Firstar Bank Illinois, 792 N.E.2d 1, 4 (Ill. App. Ct. 2003). Parties to a contract are free to include any terms they choose, as long as those terms are not against public policy, and do not contravene some positive rule of law. McMahon v. Chicago Mercantile Exchange, 582 N.E.2d 1313, 1319 (Ill. App. Ct. 1991). In Illinois, parties can limit remedies, liabilities and damages, if their agreement clearly states as such, and no public policy bar exists. Cress v. Recreation Services, Inc., 795 N.E.2d 817, 851 (Ill. App. Ct. 2003). An exculpatory provision that refers to negligence only precludes claims

arising from ordinary negligence, and does not cover extreme forms of negligence which are described as willful or wanton conduct. See Randle v. Hinckley Parachute Center, Inc., 490 N.E.2d 1041, 1042 (Ill. App. Ct. 1986).[2]

GES' exculpatory provision, in relevant part, states: "Provisions of this paragraph shall apply if the Exhibitor's property is lost or damaged through performance or nonperformance of services by GES, or from the negligence of GES, its subcontractors, or their respective employees." While the first clause of the sentence, "[p]rovisions. . .shall apply if the Exhibitor's property is lost or damaged through performance or nonperformance of services by GES", does not mention a particular standard of care, limitations on liability are disfavored and should not be assumed. The entire provision only expressly mentions "negligence," therefore, the exculpatory provision should be read to include only "ordinary negligence," and does not include recklessness. An examination of the facts shows that there is a genuine issue of material fact concerning whether Defendant's conduct constituted more than "ordinary negligence" and was actually "reckless." Specifically, there are genuine issues of material fact concerning whether Defendant's riggers intentionally chose not to use a shackle on the middle lifting point, even though Plaintiff's instructions clearly showed the use of shackles (and Defendant's agents chose not to use any protective materials), and if so, whether that behavior was was reckless. Consequently, because the exculpatory provision at issue does not apply to reckless conduct, and there is a genuine issue of material fact concerning whether Defendant's conduct was reckless,

---

[2] In Illinois, "gross negligence", "recklessness," and "willful and wanton" misconduct are synonymous, and refer to the same degree of culpability. Illinois defines "recklessness" as "gross negligence" or a "gross deviation from the ordinary standard of care which a reasonable person would exercise in such a situation." People v. Howard, 597 N.E.2d 703, 708 (Ill. App. Ct. 1992).

Defendant is not entitled to partial summary judgment on the issue of damages. Because the Court has found that GES' limits of liability do not encompass recklessness, the Court need not address IMR's second ground for relief, that exculpatory clauses that encompass willful and wanton conduct are unenforceable as a mater of law.[3]

### B. Were Defendant's Limits of Liability Void Because of Misrepresentation?

Plaintiff contends that Sokolowski, Defendant's agent, affirmatively misrepresented the nature and effect of the "Limits of Liability" provision. Specifically, Plaintiff asserts that Maddox contacted Sokolowski specifically to inquire about the limits of liability provisions. Sokolowski advised Maddox that Defendant had a certificate of insurance, and that this insurance would cover any loss or damage to the T-Flex machine while Defendant's agents were unloading or moving the machine. IMR contends that Maddox reasonably understood this to mean that, despite the limits of liability, GES would compensate IMR for any losses if GES' agents dropped the T-Flex Machine. Plaintiff asserts that during this litigation, it has learned that GES in fact had no "certificate of insurance" and does not intend to cover any losses caused by its agents. Plaintiff maintains that Sokolowski's affirmative representation reasonably led Plaintiff to believe that the limits of liability would not bar any claims for losses caused by Defendant's agents.

Illinois law does not clearly state whether an exculpatory provision is enforceable if its nature or effect is misrepresented. However, states with similar policies on exculpatory

---

[3] Plaintiff is correct, however, exculpatory clauses cannot protect from willful and wanton conduct. See Zimmerman v. Northfield Real Estate, Inc., 501 N.E.2d 409, 415 (Ill. App. Ct. 1987).

provisions[4] have addressed the issue of misrepresentation. For example, pursuant to Wisconsin law, an exculpatory provision is not enforceable if its nature or effect is misrepresented, even if a person is unable to prove all of the elements of fraud. Cadek v. Great Lakes Dragaway, Inc., 58 F.3d 1209, 1212-1213 (7th Cir. 1985). Wisconsin's policies on exculpatory clauses are parallel to the Illinois provisions. As a consequence, it is reasonable to conclude that Illinois State Courts would similarly find that exculpatory provisions are not enforceable if their nature or effect are misrepresented. Consequently, this Court finds, a matter of law, that an exculpatory provision is not enforceable if its nature or effect is misrepresented, even if a person is unable to prove all of the elements of fraud. Plaintiff presents sufficient evidence to raise a genuine issue of material fact concerning whether Defendant's agent misrepresented the nature of GES' exculpatory clause. If there was a misrepresentation, then the exculpatory provisions are voided.

### C  Are the Limits of Liability Void Because Plaintiff Was Forced to Use Defendant's Rigging Services and Did Not Have Equal Bargaining Power?

Plaintiff believes that there is significant evidence demonstrating that it was at a significant disadvantage in terms of bargaining power. Plaintiff states that Defendant had the rigging monopoly at IMTS 2002, was the only entity authorized to unload Plaintiff's T-Flex machine, and thus, Plaintiff had no reasonable alternative for the services. In addition, Plaintiff argues that Sokolowski's misrepresentations put the Plaintiff at a severe bargaining disadvantage.

---

[4] (Illinois courts have found that exculpatory provisions are disfavored, and strictly construed against the party seeking to enforce the exculpatory provisions. See Jewelers Mutual, 792 N.E.2d at 5.)

"The general rule is to enforce exculpatory agreements unless: (1) it would be against settled public policy to do so; or (2) there is something in the social relationship of the parties militating against upholding the agreement." White v. Village of Homewood, 628 N.E.2d 616, 619 (Ill. App. Ct. 1993). Exculpatory agreements that are contrary to public policy includes those: (1) between an employer and an employee; (2) between the public and those charged with a duty of public service, such as involving a common carrier, an innkeeper, a public warehouseman or a public utility; and (3) between parties where there is such a disparity of bargaining power that the agreement does not represent a free choice on the part of plaintiff, such as a monopoly or involving a plaintiff without a reasonable alternative. Id. (internal citations omitted).

Plaintiff's arguments focus on the fact that GES was the only provider of rigging services at the IMTS 2002. However, the correct inquiry, since this case focuses on liability for damages, is whether GES had the monopoly on insuring liability for damage. Section 6 of GES' "Limits of Liability" states that insurance shall be provided by the exhibitor. Further, the bottom portion of GES' Limits of Liability suggests that exhibitors arrange all risk coverage, and recommends that exhibitors either obtain a rider to an existing policy, or the insurance company GES provided. This clearly shows that Plaintiff had other alternatives for insuring against damage. As such, Plaintiff has not established that GES had a monopoly on insuring against damages. Consequently, while genuine issues of material fact remain concerning whether Defendant's actions were reckless, and whether Defendant's agents made material misrepresentations of fact to Plaintiff, IMR will be foreclosed from arguing that GES and Plaintiff had unequal bargaining power.

### D.  Are Limits of Liability Void As to All Misconduct, Including Negligence. Due to Federal OSHA Regulations?

Plaintiff asserts that Defendant and its agents violated Federal Occupational Health and Safety Administration ("OSHA") regulations, as codified in 29 C.F.R., § 1910.1, et. seq. Plaintiff notes that these extensive regulations were intended to carry out Congress' purpose in enacting the 1970 William-Steger Occupational Health and Safety Act.  Plaintiff contends that some of the Defendant's OSHA violations included the following provisions: "Slings shall be padded or protected from the sharp edges of their loads."  29 C.F.R. § 1910.184(c)(7), and "Rigging equipment shall not be loaded in excess of its recommended safe working load."  29 C.F.R. § 1926.251(a)(2).  IMR maintains that the extensive federal OSHA regulations evidence a policy of ensuring public safety and serve an important purpose, and GES' limits of liability, which would permit it to evade the full impact of such critical safety violations, is unenforceable as a matter of law.

Plaintiff is correct in its assertion that an exculpatory provision will not be enforced where it is contrary to an important public policy and would permit defendant to avoid liability for breach a duty imposed by law.  Zimmerman, 510 N.E.2d at 416.  However, OSHA regulations, and Defendant's adherence to those standards, are not at all relevant to the contractual relationship between Defendant and Plaintiff (or any of the other IMTS 2002 exhibitors).  GES' limits of liability speak only to its relationship between exhibitors, and says nothing about GES' own employees.  Further, the dispute between the Parties relates to property damage, not personal injuries.  Therefore, Plaintiff is foreclosed from arguing that GES' limits of liability contravene Federal OSHA regulations.

## IV. Conclusion

Genuine issues of material fact remain concerning whether the actions of Defendant's agents were reckless, and whether Defendant's agents made material misrepresentations of fact to Plaintiff. Consequently, Defendant's motion for partial summary judgment is DENIED.

Enter:

/s/ David H. Coar
_____
David H. Coar
United States District Judge

Dated: **March 31, 2005**